JC

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anaelisa Espina Gonzalez, | No. CV-26-02083-PHX-SHR (JZB) |
| Petitioner, | **ORDER** |
| v. | |
| Markwayne Mullin, et al., | |
| Respondents.[1] | |

Petitioner filed this action under 28 U.S.C. § 2241 challenging her immigration detention.  (Doc. 1.)  The Court directed Respondents to show cause why the Petition should not be granted and permitted Petitioner to file a reply.  (Doc. 4.)  Upon review of the briefing (Docs. 7, 8),[2] the Court will grant the Petition and order Petitioner's immediate release from custody.

## I.     BACKGROUND

Petitioner is a native and citizen of Venezuela.  (Doc. 1 ¶ 26.)  Petitioner entered the United States on or about December 16, 2021, and was detained upon entry.  (*Id.* ¶ 32.)  On December 18, 2021, the Department of Homeland Security (DHS) conducted a custody determination and released Petitioner on her own recognizance pending her immigration

---

[1] Respondents contend Eric Rokowsky, Warden of the Eloy Detention Center, is the only proper Respondent. (Doc. 7 at 1–2.) *See Doe v. Garland*, 109 F.4th 1188, 1195–96 (9th Cir. 2024).  Because the Warden is a named Respondent and can effectuate the relief ordered herein, the Court need not further address this argument.

[2] Petitioner has also filed a Motion to Expedite (Doc. 9).  Because the Court grants the Petition, the Motion will be denied as moot.

proceedings. (*Id.*; Doc. 1-1 at 2-3.) The Order of Release on Recognizance states that it was issued "[i]n accordance with section 236 of the Immigration and Nationality Act," i.e., 8 U.S.C. § 1226. (Doc. 1-1 at 2.) Following her release, Petitioner obtained employment authorization and timely applied for asylum, withholding of removal, and protection under the Convention Against Torture. (Doc. 1 ¶¶ 34, 38; Doc. 1-2 at 4.) Thereafter, Petitioner applied for Temporary Protected Status (TPS), which was granted on July 15, 2024. (Doc. 1 ¶ 35.) Petitioner timely re-registered for TPS in January 2025. (Doc. 1 ¶ 36; Doc. 1-1 at 9; Doc. 1-2 at 2.)

On February 22, 2026, immigration officers re-detained Petitioner during an enforcement action directed at another individual. (Doc. 1 ¶ 2.) Petitioner remains detained at the Eloy Detention Center. (*Id.* ¶ 45.)

Petitioner alleges she received no written notice of the basis for the revocation of her release, no individualized assessment of flight risk or danger, and no hearing before a neutral decisionmaker prior to her re-detention. (*Id.* ¶¶ 4, 40-43.) Since the Petition was filed, an Immigration Judge denied Petitioner's application for asylum. (Doc. 9 at 2.) Petitioner states she intends to timely appeal the ruling to the Board of Immigration Appeals. (*Id.*)

## II.    DISCUSSION

As an initial matter, the Court finds Respondents have not discharged their obligations under the Court's March 31, 2026 Order to Show Cause (OSC) or 28 U.S.C. § 2243. Section 2243 provides when a court directs a respondent to show cause for why a writ pursuant to § 2241 should not be granted, the respondent "shall make a return certifying the true cause of the detention." 28 U.S.C. § 2243. Echoing this statutory directive, the Court's March 31, 2026 OSC directed that "[a]ny response must be supported by documentary evidence including, if applicable, affidavits by individuals with personal knowledge of the factual statements made therein and signed under penalty of perjury." (Doc. 4 at 2.) Here, however, Respondents have provided no evidence at all. Indeed, Respondents' central factual assertion—that Petitioner's TPS "was ultimately terminated

on November 20, 2025" (Doc. 7 at 1)—is unaccompanied by any documentary support. Accordingly, and at a minimum, Respondents have failed to demonstrate Petitioner is properly and mandatorily detained pursuant to 8 U.S.C. § 1225. The Petition can thus be granted on this basis alone. 28 U.S.C. §§ 2241(c)(1), 2243.

In any event, the Due Process Clause protects all persons within the United States from being "deprived of life, liberty, or property, without due process of law." U.S. CONST. Amend. V. It is well established that the Due Process Clause applies to noncitizens within the United States "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). The Court's due process analysis is separated into two steps: First, the Court asks "whether there exists a liberty or property interest of which a person has been deprived," and, if so, "whether the procedures followed by the [government] were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011).

### A. Statutory Classification

Four statutes grant the government authority to detain noncitizens who have been placed in removal proceedings: 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), and 1231(a). "A noncitizen's place within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." *Avilez v. Garland*, 69 F.4th 525, 529 (9th Cir. 2023) (cleaned up). Here, Respondents assert "Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)." (Doc. 7 at 10.) The Court disagrees. Rather, Petitioner is properly classified under 8 U.S.C. § 1226(a).

While Respondents treated Petitioner as an applicant for admission upon her December 16, 2021 entry, and could have subjected her to mandatory detention under § 1225(b), they instead conducted a custody determination and elected to release her on her own recognizance pursuant to 8 U.S.C. § 1226(a) and its implementing regulations. (Doc. 1-1 at 2–3.) Thereafter, Petitioner was granted TPS on July 15, 2024, and timely re-registered in January 2025. (Doc. 1-1 at 9; Doc. 1-2 at 2.) As a growing number of district

courts have held, petitioners who were granted TPS and released into the community are not "seeking admission" under § 1225 and instead fall under § 1226(a). *See, e.g.*, *Diaz-Aguero v. Noem*, No. 2:26-cv-00637, 2026 WL 915053, at *2 (W.D. Wash. Apr. 3, 2026); *Pena-Hernandez v. Noem*, No. 26CV0872-LL-JLB, 2026 WL 926916, at *2 (S.D. Cal. Apr. 6, 2026) (finding a petitioner who was granted TPS and resided in the U.S. for two-and-a-half years was properly categorized under 8 U.S.C. § 1226(a), not 8 U.S.C. § 1225(b)); *Gutierrez Navarro v. Noem*, No. 2:26-CV-00334-TLF, 2026 WL 482686, at *4 (W.D. Wash. Feb. 20, 2026) (holding petitioner who "ha[d] been in the community for over two years, was granted TPS, received employment authorization, and complied with reporting requirements" was detained under § 1226, not § 1225); *Medina v. Mattos*, No. 2:25-CV-02020-CDS-BNW, 2026 WL 19130, at *4 (D. Nev. Jan. 4, 2026). Therefore, Petitioner's detention is governed by 8 U.S.C. § 1226(a).[3]

Even assuming *arguendo* Petitioner's detention is—as Respondents argue—pursuant to § 1225(b)(2)(A) rather than § 1226(a), that classification "does not obviate Respondents' obligation to comply with due process" in re-detaining Petitioner. *Caisa Telenchana v. Hermosillo*, No. 2:26-CV-00363-GJL, 2026 WL 696806, at *10 (W.D. Wash. Mar. 12, 2026). Rather, an individual released from custody on conditions retains a constitutionally protected liberty interest in her continued release. *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (stating individuals on conditional release possess a liberty interest in their "continued liberty" that "includes many of the core values of unqualified liberty"). Numerous courts have applied this principle to noncitizens who, like Petitioner, were released from immigration custody and later re-detained without process. *See, e.g.*, *J.C.E.P. v. Wofford*, No. CV-25-01559-EFB (HC), 2025 WL 3268273, at *6 (E.D. Cal. Nov. 24, 2025) (collecting cases); *Ramirez Clavijo v. Kaiser*, No. CV-25-06248-BLF, 2025 WL 2419263, at *6 (N.D. Cal. Aug. 21, 2025) ("Petitioner thus has shown a likelihood of

---

[3] Respondents devote a substantial portion of their Response to arguing the declaratory judgment entered in *Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM (C.D. Cal.) has no preclusive effect outside the Central District of California. (Doc. 7 at 4–7.) Petitioner, however, does not rely on *Bautista*, and the Court does not rely on it in resolving the Petition.

success on the merits of her claim that she is entitled to a pre-deprivation hearing before a neutral decisionmaker prior to any re-arrest or detention under the Due Process Clause."); *Singh v. Andrews*, No. CV-25-00801-KES-SKO (HC), 2025 WL 1918679, at *8 (E.D. Cal. July 11, 2025) ("On balance, the *Mathews* factors show that petitioner is entitled to process, and that process should have been provided before petitioner was detained."); *E.A.T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) (holding due process required a hearing before re-detention and ordering petitioner's immediate release); *Ledesma Gonzalez v. Bostock*, No. 2:25-cv-01404-JNW-GJL, 2025 WL 2841574, at *7–9 (W.D. Wash. Oct. 7, 2025) (holding re-detention without a pre-deprivation hearing violated due process); *Kumar v. Wamsley*, No. 2:25-cv-01772-JHC-BAT, 2025 WL 2677089, at *2–4 (W.D. Wash. Sept. 17, 2025) (same).

Here, DHS released Petitioner on her own recognizance in December 2021, and she remained at liberty in the community for more than four years. Petitioner obtained employment authorization, pursued relief from removal, and, to the best of her knowledge, complied with all conditions of her release before ICE re-detained her on February 22, 2026. (Doc. 1 ¶¶ 33–40.) Respondents do not contend Petitioner received written notice, an individualized assessment of flight risk or danger, or a hearing before a neutral decisionmaker prior to her re-detention, and they have provided no evidence suggesting that she did. (*See generally* Doc. 7.) Accordingly, Petitioner has a liberty interest in her release.

### B. Proper Procedural Process

Because Petitioner has a liberty interest in her release, the Court must now determine what procedures are required to overcome that interest. To do so, the Court applies the three-part *Mathews v. Eldridge* test. 424 U.S. 319 (1976).[4] Under the *Mathews*

---

[4] Respondents' reliance on *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022) is misplaced. (Doc. 7 at 8–10.) *Rodriguez Diaz* addressed the process due to a noncitizen detained under § 1226(a) who had already received a bond hearing and sought a second hearing with a shifted burden of proof; it did not address the process due before the Government revokes a years-long release and re-detains a noncitizen who has complied with the conditions of that release.

test, the Court considers:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

As to the first factor, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.")); *Addington v. Texas*, 441 U.S. 418, 425 (1979) ("This Court repeatedly has recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection."); *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process."); *Rodriguez v. Marin*, 909 F.3d 252, 256–57 (9th Cir. 2018) ("Arbitrary civil detention is not a feature of our American government. 'Liberty is the norm, and detention prior to trial or without trial is the carefully limited exception.'" (cleaned up) (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987))); *cf. Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) ("The Supreme Court has been unambiguous that executive detention orders, which occur without the procedural protections required in courts of law, call for the most searching review." (citing *Boumediene v. Bush*, 553 U.S. 723, 781–83, 786 (2008))). This factor favors Petitioner.

Turning to the second factor, "[w]here an individual has not received a bond or redetermination hearing, the risk of an erroneous deprivation [of liberty] is high." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *12 (N.D. Cal. Sept. 12, 2025) (citation omitted). The Court concludes there is a significant risk of

erroneous deprivation where a bond or redetermination hearing has not been performed. Therefore, this factor also favors Petitioner.

Finally, as to the third *Mathews* factor, "[i]f the government wishes to re-arrest [a petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019). Further, detention hearings in immigration courts are commonplace and impose a minimal cost. *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025); *Abduraimov v. Andrews*, No. 1:25-CV-00843-EPG-HC, 2025 WL 2912307, at *7 (E.D. Cal. Oct. 14, 2025) ("Courts generally have found that the cost of providing a bond hearing is relatively minimal, and there is nothing in the record before this Court demonstrating that providing Petitioner with a bond hearing would be fiscally or administratively burdensome."). In any event, "[d]etention for its own sake, to meet an administrative quota, or because the government has not yet established constitutionally required pre-detention procedures is not a legitimate government interest." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1036 (N.D. Cal. 2025). This factor thus favors Petitioner as well.

The Court therefore finds the *Mathews* factors weigh in favor of finding Petitioner was entitled to a hearing before she was re-detained and placed in DHS custody. Accordingly, the Court will direct Respondents to immediately release Petitioner. *See Singh v. Unknown Party*, No. CV-26-00483-PHX-JCH (CDB), 2026 WL 809849, at *4 (D. Ariz. Mar. 24, 2026) ("The Court finds that immediate release, rather than requiring another bond hearing, is the appropriate remedy."). Moreover, Respondents themselves request that, in the event the Court grants relief, any order direct them to provide a bond hearing within seven days "or release Petitioner from custody under the same conditions that existed before detention." (Doc. 7 at 10.)

**IT IS ORDERED**:

(1)    The Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED**.

(2)    Petitioner's Motion for Expedited Ruling (Doc. 9) is **DENIED AS MOOT**.

(3)    Respondents must **IMMEDIATELY RELEASE** Petitioner from custody under the same conditions that existed before her re-detention.

(4)    Respondents shall provide a Notice of Compliance within **THREE (3) BUSINESS DAYS** of the date of this Order.

(5)    Any request for fees and costs pursuant to 28 U.S.C. § 2412 shall be filed within 30 days of final judgment.  *See* 28 U.S.C. § 2412(d)(1)(B); (d)(2)(g).

(6)    The Clerk of Court must enter judgment accordingly and close this case.

Dated this 9th day of July, 2026.

Honorable Scott H. Rash
United States District Judge

- 8 -